*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *STEVEN JOHNSON,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 07-188-P-S* |
| | ) | |
| *TOWN OF GORHAM,[1] et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

*RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

The defendants, the Town of Gorham, the Gorham Police Department, Ronald Shepard,

Chief of Police for the Town of Gorham, and Michael Coffin, Dean Hannon, Michael Nault, and

Benjamin Moreland, Gorham police officers, move for summary judgment on all counts of the

plaintiff's complaint.  I recommend that the court grant the motion in part.

## I.  Summary Judgment Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if

the evidence about the fact is such that a reasonable jury could resolve the point in the favor of

the non-moving party."  *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*,  532 F.3d

---

[1] The defendants' answer, Answer to Complaint (Docket No. 3) at 1, their motion for summary judgment, Defendants City of Gorham, Gorham Police Department, Shepard, Coffin, Hannon, Nault and Moreland's Motion for Summary Judgment ("Motion") (Docket No. 13) at 1, and the town's own web site, www.gorham-me.org, make clear that the municipality of Gorham is a town, not a city as the complaint would have it.  I have changed the caption of the case to reflect the appropriate name.

28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id.* The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material

facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II.  Factual Background

The following undisputed material facts are appropriately presented in the parties' respective statements of material facts submitted pursuant to Local Rule 56.

3

Defendant Ronald Shepard was employed by the defendant town as the chief of police at all relevant times.  Defendants' Statement of Material Facts ("Defendants' SMF") (Docket No. 14) ¶ 1; Plaintiff's Response to Defendants' Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 14) ¶ 1.  He graduated from the Maine Criminal Justice Academy and is certified to function as a police officer.  *Id*. ¶ 2.  He has been chief of the Gorham Police Department since September 27, 1995.  *Id*. ¶ 3.  He is familiar with the policies and procedures concerning arrest and the use of force in connection with arrests, as well as the training given to Gorham police officers in these areas.  *Id*. ¶ 4.

Before any police officer hired by the Town of Gorham is allowed to patrol on his or her own, he or she must first graduate from the Maine Criminal Justice Academy and be certified by the State of Maine to perform the duties assigned to a patrol officer.  *Id*. ¶ 5.  All new police officers in Gorham must also complete the Police Department's field training program, which includes ongoing reviews of an officer's performance by supervisory personnel.  *Id*. ¶¶ 6-7.  One Gorham police officer is assigned to oversee all of a new officer's activities as a patrol officer during the field training period.  *Id*. ¶ 8.  Included in field training is a review of the Standard Operating Procedures of the Gorham Police Department, including the policies governing arrest and the use of force in connection with an arrest.  *Id*. ¶ 10.  State and federal laws governing arrest and the use of force are also taught as part of the curriculum at the Maine Criminal Justice Academy.  *Id*. ¶ 11.

Police officers are required to complete continuing education, as assigned by the state, every year in order to maintain their certification.  *Id* ¶ 12.  The Standard Operating Procedures of the Gorham Police Department are also reviewed periodically with all officers.  *Id*. ¶ 13.

At all relevant times, defendant Michael Nault was employed as a police officer by the Town. *Id*. ¶ 17. He graduated from the Maine Criminal Justice Academy on May 24, 1996. *Id*. ¶ 18. On January 18, 2006, Nault was authorized to function as a police officer in the State of Maine through his certification from the Maine Criminal Justice Academy. *Id*. ¶ 19. At both the Academy and the Town, Nault received training in proper arrest procedures, including the lawful use of force in connection with an arrest. *Id*. ¶ 20. On January 18, 2006, Nault held the rank of sergeant in the Gorham Police Department and was the supervisor of Officers Coffin, Hannon, and Moreland. *Id*. ¶ 22.

At all relevant times, defendant Michael Coffin was employed as a police officer by the Town. *Id*. ¶ 23. He graduated from the Maine Criminal Justice Academy in June 2000. *Id*. ¶ 24. On January 18, 2006, he was authorized to function as a police officer in the State of Maine through his certification by the Maine Criminal Justice Academy. *Id*. ¶ 25.

At all relevant times, defendant Dean Hannon, II, was employed as a police officer by the Town of Gorham. *Id*. ¶ 28. He graduated from the Maine Criminal Justice Academy in June 2004. *Id*. ¶ 29. On January 18, 2006, he was authorized to function as a police officer in the State of Maine through his certification by the Maine Criminal Justice Academy. *Id*. ¶ 30.

At all relevant times, defendant Benjamin Moreland was employed as a police officer by the Town of Gorham. *Id*. ¶ 33. He graduated from the Maine Criminal Justice Academy on November 17, 2000. *Id*. ¶ 34. On January 18, 2006, he was authorized to function as a police officer in the State of Maine through his certification by the Maine Criminal Justice Academy. *Id*. ¶ 35.

Prior to January 18, 2006, Shepard was not aware of any problems involving Nault, Coffin, Hannon, or Moreland and their knowledge of Maine's laws governing arrests and the use

of force.  *Id.* ¶ 38.[2]  Prior to that date, Shepard had not received any credible information that any of these officers had exercised his arrest powers incorrectly or had needlessly used force in making an arrest, or that there was a demonstrated need for additional training and/or supervision of any of these officers in these areas.  *Id.* ¶ 39.  Prior to that date, Shepard had received no credible information indicating that there was a widespread problem with other Gorham police officers concerning the use of their power of arrest or their use of force in connection with arrests.  *Id.* ¶ 40.

On January 18, 2006, at approximately 11:05 p.m., Coffin attempted to initiate a traffic stop with the use of his blue lights and siren.  *Id.* ¶ 42.  He wanted to stop a vehicle because he believed that there were inadequate plate lights on the vehicle.  Plaintiff's Statement of Material Facts ("Plaintiff's SMF") (Docket No. 23) ¶ 2; Defendants' Reply Statement of Material Facts ("Defendants' Responsive SMF") (Docket No. 31) ¶ 2.  The vehicle's operator did not stop, and Coffin pursued the vehicle for at least 38 seconds.    Defendants' SMF ¶ 43; Plaintiff's Responsive SMF ¶ 43.  The vehicle then turned left onto Spiller Road, on the property of the Spiller Farm.  *Id.* ¶ 44.  The Spiller Farm is located in a secluded rural area without street lights.  *Id.* ¶ 45.  The vehicle went down a muddy driveway or road between the farmhouse and a barn and continued out into a field behind the barn before coming to a stop.  *Id.* ¶ 46.

Before Coffin could get out of his cruiser, the male operator of the vehicle and a male passenger got out of the vehicle.  *Id.* ¶ 47.  Coffin was able to identify the operator as Donald Spearin, Jr. and the passenger as the plaintiff, due to his prior contacts with both.  *Id.* ¶ 48.  Coffin got out of his cruiser, drew his service pistol and ordered both men to the ground.  *Id.* ¶ 50.  Coffin holstered his weapon and ran over to Spearin, telling him that he was under arrest

---

[2] The plaintiff denies this paragraph of the defendants' statement of material facts, but the denial does not address the substance of the paragraph, Plaintiff's Responsive SMF ¶ 38, which accordingly is deemed admitted because it is supported by the citation given to the summary judgment record.  Local Rule 56(e).

for failing to stop for a police officer. *Id.* ¶ 53.  Coffin could smell a strong odor of intoxicants on Spearin's breath. *Id.* ¶ 54.  As Coffin attempted to arrest Spearin, the plaintiff approached and yelled complaints about the police. *Id.* ¶ 55.

Coffin ordered the plaintiff to stay back or face arrest for obstructing his governmental duties. *Id.* ¶ 56.  Coffin radioed dispatch and requested emergency back-up officers. *Id.* ¶ 58.  Coffin put Spearin in the back seat of his cruiser and shut the door. *Id.* ¶ 62.[3]

At approximately 11:00 that night, Nault heard Coffin advise that he was attempting to initiate a traffic stop with a vehicle that was refusing to stop for him. *Id.* ¶ 66.  He began to drive toward the area of the chase, but before he could locate Coffin, Coffin radioed that he was out of his cruiser behind the Spiller Farm buildings. *Id.* ¶ 67.  Moments later, Nault heard Coffin requesting immediate assistance from other officers. *Id.* ¶ 68.  Hannon responded to this call from Coffin. *Id.* ¶ 69.

When Hannon arrived, he heard Coffin order the plaintiff to stay back. *Id.* ¶ 72.[4]  Coffin and Hannon got the plaintiff onto the ground. *Id.* ¶ 76.  The plaintiff was on the ground when Nault arrived on the scene. *Id.* ¶ 78.  As he reached the struggling men, Nault recognized the plaintiff, with whom he was familiar from previous contacts. *Id.* ¶ 79.  Nault repeatedly called the plaintiff by name, telling him to place his hands behind his back. *Id.* ¶ 82.  During the struggle, Hannon sprayed the plaintiff in the eyes with pepper spray, which did not seem to have any effect on him. *Id.* ¶ 83.

---

[3] The plaintiff denies paragraph 62 of the defendants' statement of material facts, Plaintiff's Responsive SMF ¶ 62, but the portion of his deposition cited in support of that denial does not address this portion of paragraph 62, Deposition of: Steven Johnson ("Plaintiff's Dep.") (Exh. I to Opposition) at 40, l.7-14, which accordingly is deemed admitted.

[4] The plaintiff denies paragraph 72 of the defendants' statement of material facts, Plaintiff's Responsive SMF ¶ 72, but the portion of his deposition cited in support of that denial does not address what Hannon heard.  Because the paragraph is supported in this respect by the citation given to the summary judgment record, it is deemed admitted.

Moreland also responded to Coffin's request for immediate back-up at the Spiller Farm. *Id*. ¶ 85.  He arrived on the scene and ran behind the barn where he saw Hannon on the ground on the plaintiff's back.  *Id*. ¶ 86.  Hannon had the plaintiff in a headlock, while Coffin was trying to control the plaintiff's right arm, and Nault was commanding the plaintiff to put his hands behind his back.  *Id*. ¶ 88.   Moreland could smell the pepper spray that had been used on the plaintiff, but it seemed to have no effect on the plaintiff.  *Id*. ¶ 91.  The plaintiff resisted Moreland's attempts to control his legs, and Moreland had to use his flashlight as leverage to try to move the plaintiff's legs into a position from which he could gain control of them.  *Id*. ¶ 92. Moreland struck the plaintiff twice in the left triceps area, but it had no discernible effect on him. *Id*. ¶ 98.

Nault and Coffin were able to free the plaintiff's left arm and place it behind his back with a handcuff on the wrist.  *Id*. ¶ 100.  Eventually, they were able to force his right arm behind his back and place his right wrist in the other handcuff.  *Id*. 104.  The plaintiff was then placed in the rear of a cruiser, and his eyes were wiped with a saline solution.  *Id*. ¶¶ 105-06.  Emergency rescue personnel were called to the scene, but the plaintiff refused to be seen or treated by them. *Id*. ¶ 107.  The plaintiff said that he only wanted to go to intake at the Cumberland County Jail. *Id*. ¶ 108.

Coffin's right hand was injured and very swollen.  *Id*. ¶ 110.  Hannon had an abrasion and a large contusion above his right eye.  *Id*. ¶ 111.  Coffin advised Nault that his hand might be broken, and specifically that he believed his hand was broken when he and Hannon first took the plaintiff to the ground and they landed on a pile of metal stakes and wooden beams that were lying on the ground.  *Id*. ¶¶ 112-13.  Coffin saw that Hannon's right eye was discolored and very swollen from being punched by the plaintiff.  *Id*. ¶ 114.  Coffin and Hannon were transported to

Maine Medical Center for evaluation and treatment of their injuries, where Coffin learned that his hand was indeed broken.  *Id*. ¶ 116.

Nault then transported the plaintiff to the jail and turned him over to intake personnel for processing.  *Id*. ¶ 118.  Moreland transported Spearin to Cumberland County Jail.  *Id*. ¶ 119.  The only medical treatment that the plaintiff received for any alleged injuries suffered during his arrest was at the medical department at the Cumberland County Jail on January 20, 2006, when he requested that several small bruises and cuts on his face and arms be examined by medical personnel.  *Id*. ¶ 125.  This medical examination disclosed no injury to his nose.  *Id*. ¶ 126.

In November and December 2005, the plaintiff was treating with Dr. Linda Sanborn for difficulty controlling his rage.  *Id*. ¶ 127.

The cruiser Coffin was operating on January 18, 2006, was equipped with a dashboard-mounted videotaping system.  *Id*. ¶ 128.  The camera was activated when Coffin began pursuing Spearin's vehicle.  *Id*. ¶ 129.  The clock on the system was not correctly synchronized to the actual time that night.  *Id*. ¶ 130.  The system began recording at 23:00:55, not the 21:00:55 that appears on the videotape.  *Id*. ¶ 131.  The camera is set up to capture events that occur directly in front of the cruiser.  *Id*. ¶ 133.

Coffin's initial contact with Spearin and the plaintiff outside the vehicle is not captured on the videotape because the cruiser was not parked directly behind Spearin's vehicle.  *Id*. ¶ 134.  At 21:02:06, the video shows the pursued vehicle pulling off the highway onto a dirt road or driveway.  *Id*. ¶ 136.  From 21:02:06 to 21:02:28, the video shows the pursued vehicle driving around behind farm buildings into a dark, secluded area.  *Id*. ¶ 137.  From 21:06:42 to 21:06:43, the plaintiff is seen backing from the driver's side of Coffin's cruiser into the camera's view at

the left front of the cruiser.  *Id*. ¶ 138.  At 21:06:55, the tape shows the plaintiff moving forward, leaving the camera's view.  *Id*. ¶ 141.

From 21:07:05 to 21:07:06, the video shows the officers' struggle with the plaintiff, who is seen with his arms up around Coffin's neck and shoulders.  *Id*. ¶ 149.  At 21:07:40, Coffin disengages from the struggle on the ground as Moreland moves in to assist.  *Id*. ¶ 155.  At 21:07:55, Nault moves in and strikes the plaintiff on the shoulder with his flashlight.  *Id*. ¶ 156. At 21:08:00, Coffin rejoins the struggle and is able to get hold of the plaintiff's right arm as Hannon continues to struggle to control him.  *Id*. ¶ 157.  At 21:08:02, Hannon uses his flashlight against the back of the plaintiff's neck.  *Id*. ¶ 158.

At 21:08:12 to 21:08:14, Coffin hits the top of the plaintiff's head with his hand while Hannon struggles to control him.  *Id*. ¶ 160.  At 21:08:19, Coffin uses pepper spray.  *Id*. ¶ 161. At 21:08:41 to 21:08:42 as the plaintiff holds his arms out stiffly, Moreland strikes his left arm twice with a collapsible metal baton.  *Id*. ¶ 163.  At 21:08:45 to 21:08:52, Coffin rejoins the struggle with the plaintiff and is able to get the plaintiff's left arm behind his back while Nault applies his handcuffs.  *Id*. ¶ 164.  At 21:09:22, the plaintiff's right wrist is placed in the handcuffs to complete his handcuffing.  *Id*. ¶ 166.  At 21:09:22, Coffin pats the plaintiff's head several times when he is in custody.  *Id*. ¶ 167.

The plaintiff was arrested by Gorham police for criminal trespass in 2001 and for refusing to sign a summons in 2005.  Plaintiff's SMF ¶¶ 46-47; Defendants' Responsive SMF ¶¶ 46-47.

According to the Gorham Police Department Policy Manual, upon the use of non-deadly or deadly force, a Use of Force form and a memorandum should be submitted to the chief.  *Id*. ¶ 52.  No Use of Force form was completed by Coffin with respect to the events of January 19,

2006, when his right hand was broken.  *Id*. ¶ 53.  The use of force policy in effect at the time indicated that blows to the head by impact weapons should be avoided.  *Id*. ¶ 66.

### III.  Discussion

The complaint presents the following claims: violation of 42 U.S.C. § 1985 (Count I); constitutional violations by the police officers (Counts II-V); constitutional violations by Shepard (Count VII); constitutional violations by the Town (Count VIII); violation of the Maine Civil Rights Act, 5 M.R.S.A. § 4682, by all of the defendants (Count IX); civil conspiracy by all of the defendants (Count X); assault by each of the police officers (Counts XI-XIV); and intentional infliction of emotional distress by the police officers (Count XV).  Complaint (Docket No. 1) ¶¶ 49-112.  There is no Count VI in the complaint.

### A.  Count I

The defendants first contend, Motion at 5, that the plaintiff has failed to state a claim on which relief may be granted under 42 U.S.C. § 1985 because he has not alleged that he belongs to any protected class that was the object of the discriminatory animus of the alleged conspirators, as required for such a claim.  *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). The plaintiff in response "concedes that the requirement of Plaintiff being a member of a protected class can not be made out and as such does not oppose judgment for Defendants on Count I."  Plaintiff's Objection to Defendants' Motion for Summary Judgment ("Opposition") (Docket No. 21) at 9.  Accordingly, summary judgment should be granted on Count I.

### B.  Counts II-V

Counts II-V allege that Coffin, Hannon, Nault, and Moreland "unreasonably and/or intentionally . . . violated Plaintiff's clearly established rights to bodily integrity, to be free from the use of excessive force, and his right to an action to pursue a claim for the deprivation of these

11

rights," Complaint ¶¶ 54, 60, 66, 72, and "Plaintiff's clearly established right to due process," *id*. ¶¶ 55, 61, 67, 73, under both the federal and the Maine constitution.

The defendants point out, Motion at 6, correctly, that these claims must be analyzed under the Fourth Amendment and not under a due process standard. *Graham v. Connor*, 490 U.S. 386, 390, 395 (1989). The claims brought under the Maine Constitution are governed by the same analysis. *Forbis v. City of Portland,* 270 F.Supp.2d 57, 61 (D. Me. 2003). The defendants contend that their actions as alleged in the complaint "could not meet any legal test beyond mere negligence, at best" and thus cannot subject them to liability, citing *Landrigan v. City of Warwick*, 628 F.2d 736 (1st Cir. 1980). Motion at 7. However, the plaintiff has offered factual assertions (albeit denied by the defendants) that are not contradicted by what can be seen on the videotape of the event and which, if believed by a jury, demonstrate more than negligent conduct by each of these four defendants. *E.g.,* Plaintiff's SMF ¶¶ 16, 23-26, 29, 32, 34, 37-38.[5]

The defendants next argue that they are entitled to qualified immunity "because a reasonable police officer, when viewed objectively, could have concluded that the force used during the struggle was lawful under the circumstances." Motion at 8. Courts in the First Circuit apply a three-part test to a claim of qualified immunity.

> Defendants are entitled to qualified immunity unless (1) the facts alleged show the defendants' conduct violated a constitutional right, and (2) the contours of this right are clearly established under then-existing law (3) such that a reasonable officer would have known that his conduct was unlawful.

*Berube v. Conley*, 506 F.3f 79, 82 (1st Cir. 1007) (citations and internal punctuation omitted). The defendants' argument in this case addresses only the third element of this test.

---

[5] I have watched the video made by the camera in Coffin's police cruiser at the time of the incident that gave rise to this action. Exh. A to Affidavit of Michael Coffin (Docket No. 17). It is not determinative of any factual assertion made in this case to date beyond those describing the circumstances under which it was made. Contrary to the defendants' suggestion, Defendants' Reply Brief (Docket No. 30) at 4, it is not a video that "blatantly contradict[s]" the plaintiff's version of events, as did the videotape in *Scott v. Harris*, 127 S.Ct. 1769 (2007).

> [T]he Supreme Court's standard of reasonableness is comparatively generous to the police in cases where potential danger, emergency conditions, or other exigent circumstances are present.  . . . [T]he calculus of reasonableness must make allowance for the need of police officers to make split second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Id* at 82-83 (citations and internal punctuation omitted).

The defendants correctly point out that they were not required to use the least intrusive or forceful means of taking "a violent and resisting arrestee into custody," Motion at 9.  But that argument assumes that the characterization of the defendant at the relevant time as "violent and resisting" is undisputed.  It is not.  Defendants' SMF ¶¶ 49-52, 57, 59-60, 62-65, 70, 73-75, 77, 81, 84, 89-90, 93-96, 99, 101, 103, Plaintiff's Responsive SMF ¶¶ 49-52, 57, 59-60, 70, 73-75, 77, 81, 84, 89-90, 93-96, 99, 101, 103; Plaintiff's SMF ¶¶ 16, 20-21, 24-25, 29-30, 38-39, Defendants' Responsive SMF ¶¶ 16, 20-21, 24-25, 29-30, 38-39.  It is not possible to conclude, based on the summary judgment record as presented, that the officer defendants are entitled to qualified immunity as a matter of law, on either the federal or the state constitutional claims.

The motion should be denied as to Counts II-V.

### C.  Counts VII and VIII

Count VII alleges that defendant Shepard is responsible for the officer defendants' violations of the plaintiff's constitutional rights due to "his grossly negligent policies and customs in recruitment, training, supervision, and discipline of Gorham police officers" amounting to "deliberate, reckless or callous indifference" to his constitutional rights.  Complaint ¶¶ 78-79.  Count VIII alleges that the town of Gorham is liable to the plaintiff because its policy and customs violated clearly established rights in a manner that caused the deprivation of the plaintiff's constitutional rights.  *Id*. ¶¶ 81-85.

13

The defendants contend that there is no evidence to support the allegations against Shepard and the town. Motion at 12-13. The plaintiff's response treats the two counts as if they both allege municipal liability. Opposition at 14-16.[6] After reciting case law about the circumstances under which failure to train police officers can result in municipal liability and when a single incident and decision can be sufficient to establish such liability, the plaintiff asserts that "[t]here is a genuine issue of material fact in this case as to the amount and type of training received by the defendants in this case[,]" such that a reasonable factfinder could conclude that "officers [were] left wholly untrained as to the constitutional limits of the force that they apply in effectuating arrest." *Id*. at 15-16. But no such issue is established by the summary judgment record in this case, and the conclusion which the plaintiff draws from the existing evidence is not at all reasonable.

The only evidence cited by the plaintiff in support of his argument with respect to these two counts is paragraphs 56 to 65 of his statement of material facts. *Id*. at 15. That evidence is based entirely on the officers' training logs. Plaintiff's SMF ¶¶ 56-59, 61-65. He does not dispute the defendants' evidence that their field training as members of the Gorham Police Department included review of the department's policies governing arrest and the use of force in connection with arrest, Defendants' SMF ¶¶ 4, 6-10, 13, Plaintiff's Responsive SMF ¶¶ 4, 6-10, 13, and that their training at the Maine Criminal Justice Academy included study of state and federal laws governing arrest and the use of force, Defendants' SMF ¶¶ 2, 5, 11, 18, 20-21, 24, 26-27, 29, 31-32, 34, 36-37, Plaintiff's Responsive SMF ¶¶ 2, 5, 11, 18, 20-21, 24, 26-27, 29, 31-32, 34, 36-37. This undisputed evidence is enough to entitle defendants Shepard and the town to summary judgment on Counts VII and VIII to the extent that they are based on an

---

[6] If the claim in Count VII is asserted against Shepard only in his official capacity as chief of police, it is a claim against the town. *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir. 1985).

alleged failure to train.  The plaintiff's only other theory of recovery on these claims is that the police department was "on notice . . . that Defendant Coffin would benefit from training" in the area of escalating rather than de-escalating "situations."  Opposition 16.  The "tendency to escalate circumstances instead of diffuse them," Plaintiff's SMF ¶ 60, on the part of a single officer is insufficient as a matter of law to allow the drawing of a reasonable inference that the town was aware that a violation of an individual's federal rights was "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations."  *Young v. City of Providence*, 404 F.3d 4, 28 (1st Cir. 2005) (quoting *County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997)).

Accordingly, the defendants are entitled to summary judgment on Counts VII and VIII.

## D.  Count IX

Count IX alleges a violation of the Maine Civil Rights Act, specifically 5 M.R.S.A. § 4682, by all of the defendants.  Complaint ¶¶ 86-88.  The defendants contend that this claim is "governed by this court's ruling on the Fourth Amendment claim."  Motion at 7.  The plaintiff does not appear to disagree.  However, the Fourth Amendment claims are asserted only against the officer defendants.  Thus, this claim remains active with respect to Coffin, Hannon, Nault, and Moreland.  My discussion of Counts II-V does not apply to defendants Shepard, the town, or the police department.  The defendants offer no discussion of this count with respect to those defendants, but that may be because the complaint alleges only that "Defendants attempted to interfere by physical force and threats of physical force with the exercise and enjoyment of Plaintiff's rights."  Complaint ¶ 87.  The count does not include any allegation of vicarious liability against Shepard, the town, or the police department.  These defendants could not have exerted physical force against the plaintiff, and there are no allegations in the complaint that

15

could reasonably be interpreted to allege that they threatened to use physical force against the plaintiff, if indeed they could have done so.  These defendants are entitled to summary judgment on Count IX.

### E.  State Tort Claims: Counts XI-XV

The complaint alleges in separate counts that each of the officer defendants assaulted the plaintiff.  Complaint ¶¶ 93-108.  It also alleges that these defendants[7] intentionally inflicted emotional distress on the plaintiff.  *Id*. ¶¶ 109-12.  The defendants contend that they are entitled to absolute immunity from these claims under the Maine Tort Claims Act, specifically 14 M.R.S.A. § 8111(1)(C).  Motion at 10.  The plaintiff responds that this immunity does not extend to the alleged actions of the officer defendants because "any reasonable law enforcement officer would know that initiating or escalating a physical attac[k] on an unarmed suspect, who at most can be charged with a misdemeanor offense, is outside the scope of any discretion they may have[.]"  Opposition at 17.  He does not address Count XV separately.

As an initial matter, the plaintiff does not cite any evidence in the summary judgment record to support his assertion that he could have been charged "at most . . . with a misdemeanor offense" as a result of the events at issue.  I will not consider this aspect of the plaintiff's argument further.

The portion of the Maine Tort Claims Act at issue provides:

> Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal liability for the following:
>
> * * *

---

[7] Count XV demands judgment "against Defendants" and makes some allegations against "Defendants" generally, but the operative paragraph names Coffin, Hannon, Nault, and Moreland specifically.  Complaint ¶ 111.  It is reasonable to construe this count as seeking to recover only against the officer defendants.  To the extent that it may reasonably be construed to apply to the other named defendants as well, the plaintiff has made no showing that defendant Shepard's conduct met the required elements of the tort, and I do not see how a town or a police department could have "intentionally" inflicted emotional distress.  Shepard, the town, and the police department are entitled to summary judgment on Count XV to the extent that it is asserted against them.

16

      **C**.  Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused.

                        \* \* \*

      The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question . . . and shall be available to all governmental employees, including police officers . . ., who are required to exercise judgment or discretion in performing their official duties.

14 M.R.S.A. § 8111(1).

Use of force by a police officer is a discretionary act.  *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1236 (D. Me. 1996).  The immunity provided by this statute does not apply when police officers "act in a manner so egregious as to clearly exceed, as a matter of law, the scope of any discretion they could have possessed in their official capacity as police officers."  *Id*. (citation and internal punctuation omitted).  The conduct alleged here, as presented by the plaintiff in the summary judgment record, even though disputed by the defendants, is sufficiently similar to that alleged in *Comfort*, *id*. at 1226-27, that summary judgment should similarly be precluded here, *id*. at 1237.

With respect to Count XV, the defendants also argue that the complaint "fails to plead facts that, as a matter of law," Motion at 12, set forth the elements of a claim for intentional infliction of emotional distress.  The plaintiff does not respond to this argument.

      To withstand a defendant's motion for summary judgment on a claim of intentional infliction of emotional distress, a plaintiff must present facts in support of each of the following four elements:

      (1)  the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [his] conduct;

      (2)  the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;

(3)   the actions of the defendant caused the plaintiff's emotional distress; and

(4)  the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Curtis v. Porter*, 784 A.2d 18, 22-23 (Me. 2001) (citation and internal punctuation omitted). Contrary to the defendants' assertion, the complaint does allege each of these elements. Complaint ¶¶ 110-12.  Beyond this argument, the defendants contend that "the video clearly depicts an intense two minute struggle in which four officers are needed to take Plaintiff into custody and overcome his resistance," and that the photograph of Hannon's injuries "clearly shows [that] he was assaulted and injured by Plaintiff before the struggle that is captured on the video even commenced."  Motion at 12.  Even if those were the only possible interpretations of the video and the photograph, a position with which I cannot agree, those interpretations do not establish as a matter of law that the plaintiff cannot establish that one or more of the officers intentionally inflicted emotional distress on the plaintiff.

On the showing made, the motion for summary judgment as to Counts XI-XV should be denied.

### F.  Count X: Conspiracy

Count X of the complaint alleges civil conspiracy under state law against all of the defendants.  Complaint ¶¶ 89-92.

Maine law requires the actual commission of some independently recognized tort in order to support a claim for civil conspiracy. . . . It is the tort, and not the fact of combination, that is the foundation of civil liability.  In Maine, conspiracy is not a separate tort but rather a rule of vicarious liability.

*Forbis v. City of Portland*, 2003 WL 2120675 (D. Me. May 29, 2003), at *19 (citations and internal punctuation omitted).  Here, the underlying state-law torts alleged against the officer

18

defendants will remain active, if my recommendation is adopted by the court, and there are no allegations of vicarious liability against the officers in the complaint, nor is it apparent how there could be any such allegations.[8]  If the court adopts my recommendations with respect to Counts VII-IX and XV, no possible allegations of vicarious liability against defendants Shepard, the town, and the police department will remain, and those defendants are accordingly entitled to summary judgment on this count as well.

## IV.  Conclusion

For the foregoing reasons, I recommend that the defendants' motion for summary judgment be **GRANTED** as to Counts I, VII-VIII, and X; and as to defendants Shepard, the Town of Gorham, and the Gorham Police Department on Counts IX and XV; and otherwise **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.   A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of October, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[8] Contrary to the plaintiff's assertion, Opposition at 17, neither *Francis-Sobel v. University of Maine*, 597 F.2d 15, 17 (1st Cir. 1979), nor *Slotnik v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977), hold that a constitutional violation alleged under 42 U.S.C. § 1983 may provide the independent tort that is required as the basis of a civil conspiracy claim under state law.